OPINION OF THE COURT
Bernard Tomson, J.
On October 27, 1977, the petitioner’s license as a thoroughbred veterinarian was suspended by the respondent board. On November 2, 1977, Mr. Justice Velsor directed the board to *958 hold an administrative hearing and enjoined and restrained the respondents "from interfering with petitioner’s right” to practice in accordance with his license. The Appellate Division on November 9, 1977 unanimously affirmed (59 AD2d 901) and on November 10, 1977 vacated the "automatic stay.” On November 10, 1977, Mr. Justice Rabin, acting as an Associate Justice of the Appellate Division, Second Department, signed an order to show cause returnable November 16, 1977, requiring the petitioner to show cause, inter alia, "why leave to appeal to the Court of Appeals should not be granted.” In support of this order to show cause, there was appended an affidavit of the Attorney-General, in which it was stated: "5. Appellants also seek leave to appeal this order to the Court of Appeals in that important questions of law are presented in this case that are of vital concern to the citizens of this State and have great impact on the credibility, integrity and continued operation of pari-mutuel betting on thoroughbred horse racing in this State. Particularly, there is presented herein a question which should be reviewed by the Court of Appeals, as to whether the provisions of Uncons. Laws § 7915(3) are limited or controlled by the procedures of the Administrative Procedure Act.”
In the affidavit, further, the respondents sought leave to appeal to the Court of Appeals upon the certified question, "Was the order of the Appellate Division dated November 10, 1977 properly made?”
Later in the day on November 10, an order to show cause was signed returnable November 15, seeking an order to punish the respondents for contempt for "their wilful failure to comply with the provisions of the judgment.” This is the application to be decided by this court.
In the order to show cause seeking to hold the respondents in contempt there was incorporated a provision restraining the respondents from "prohibiting petitioner access to the tracks under their jurisdiction.” It must be added that on November 11, Mr. Justice Titone, an Associate Justice of the Appellate Division, Second Department, excised this provision and noted in the margin, "stay vacated”, and signed this direction.
There is here presented a narrow issue requiring a determination as to whether CPLR 5519 (subd [a], par 1) on the facts here, provides for an automatic stay in favor of the respondents. The section reads:
*959 "(a) Stay without court order. Service upon the adverse party of a notice of appeal or an affidavit of intention to move for permission to appeal stays all proceedings to enforce the judgment or order appealed from pending the appeal or determination on the motion for permission to appeal where:
"1. the appellant or moving party is the state or any political subdivision of the state or any officer or agency of the state or of any political subdivision of the state”.
The threshold question to be decided is whether the affidavit of the Attorney-General sworn to on November 10, 1977, seeking an order to show cause for leave to appeal to the Court of Appeals, satisfies the requirement for "an affidavit of intention to move for permission to appeal.” Without question, it does, and it is here so held. It follows, therefore, that CPLR 5519 effected an automatic stay of all proceedings to enforce the judgment or order appealed from.
See Weinstein-Korn-Miller (vol 7, NY Civ Prac, par 5519.03), wherein it is stated:
"Paragraph 1 of CPLR 5519(a) is derived from sections 570 and 571 of the Civil Practice Act. Like the former sections, it provides for an automatic stay in favor of the state and its political subdivisions, or their officers and agencies, without the need for either a court order or the furnishing of an undertaking or any other act by such parties. * * *
"But, as indicated, the limitation was removed in 1965, and a court order is not necessary for a stay in the cases covered in paragraph 1 — e.g., in most Article 78 proceedings. This elimination is most unfortunate. It may, in some instances, result in placing a private party under a serious disadvantage since the state or a municipality may obtain a stay causing serious harm in instances where, were the court to weigh the equities, it should be denied. The matter would best be left to the court’s discretion with, perhaps, a presumption in favor of the stay. As it is, the private party now is at best relegated to the limited relief afforded by subdivision (c). See § 5519.15.
"Related changes which remain are effected by subdivision (c) of CPLR 5519, which authorizes the court to which the appeal is taken to vacate, limit or modify the automatic stay of paragraph 1 of subdivision (a) and, apparently, to require security even in cases within the compass of paragraph 1. Under the former practice, the exemption of the State under section 570 was unqualified, but security could be required of *960 municipalities under section 571 by order of the court 'in or from which the appeal is taken.’ ” (Emphasis supplied.) (See, particularly, n 20a, citing Byrne v Long Is. State Park Comm., 67 Misc 2d 1084; and cf. De Lury v City of New York, 48 AD2d 405, where the First Department said: "The statute providing for a stay [CPLR 5519, subd (a), par 1] expresses a public policy designed to protect a 'political subdivision of the state’, and such a stay is not lightly to be vacated.”)
It may be that since subdivision (c) authorizes only the court to which the appeal is taken to vacate the automatic stay, that at this juncture, the petitioner is deprived of an opportunity to seek relief from the stay until the motion for leave to appeal is determined.
The determination here has been expedited so that the problem may be brought to the attention of the Appellate Division on November 16.
The conclusions reached require a denial of the motion to punish for contempt.
The motion is denied.